STATE OF TEXAS v. SPENCER ELZA.

No. 2871. Decided November 20, 1918.

1.—School Land—Forfeiture—Residence and Improvements—Statutory Construction.

It is not necessary that failure of the purchaser of school land to reside on the land and failure to erect the required improvements should concur in order to subject the purchase to forfeiture under article 5424, Rev. Stats. The obvious intent of the Legislature requires "and" in such statute to be read as "or." (P. 259.)

2.—School Land—Improvements—Fencing by Former Purchaser.

Improvements erected by a former lessor of public land can not be treated as made by a subsequent purchaser who had nothing to do with their original construction and had never become invested with title thereto. (Pp. 259, 260.)

3.—Same—Practice on Appeal.

The appellate court could not disregard a finding of fact by the trial court that the purchaser of public land had never acquired title by purchase to improvements erected by a former lessee thereof, and render a contrary finding, where the evidence thereon was conflicting. (P. 261.)

4.—School Land—Purchaser—Title Remaining in State.

A purchaser of public land on condition of residing thereon and erecting improvements within a prescribed time obtains only the right to acquire the

land by continued compliance The title meantime remains in the State. Williams v Finley, 99 Texas, 474, followed. (Pp. 260, 261.)

### 5.—Same—Improvements by Former Lessee.

Where fencing erected and owned by a former lessee of public land becomes a part of the realty by his failure to remove same within sixty days after expiration of the lease, the ownership thereof passed to the State as owner of the title; not to a purchaser of the land upon conditions, not yet performed, of continued residence and erection of improvements. (P. 261.)

### 6.—Same—Limitation.

The title to public land awarded to a purchaser on condition of residence and improvements remaining in the State until such conditions have been fulfilled, title by limitation to fences erected by a former lessee of the land and not removed by him passed to the State as owner of the land, not to the purchaser while performing the conditions; and these were not, through title in the latter by limitation, to be reckoned as improvements by him under his contract of purchase. (P. 261.)

### 7.—Practice on Appeal—Rendition or Remand.

The Court of Civil Appeals can not substitute its findings of fact, on conflicting evidence, for those of the trial court, and render judgment thereon. But its findings, where it has so done, will be treated by the Supreme Court as a reversal of the trial court's findings of fact, and necessitate a reversal and remand. Pollock v. Railway Co., 103 Texas, 70. (P. 261.)

Error to the Court of Civil Appeals for the Eighth District, in an appeal from Brewster County.

The State sued Elza for recovery of land and had judgment. On defendant's appeal, this was reversed and rendered in his favor, and the State obtained writ of error.

*B. F. Looney,* Attorney General, *G. B. Smedley,* Assistant, *J. D. Martin,* and *Walter Gillis,* for plaintiff in error.—The Court of Civil Appeals is wholly without authority to find the facts directly contrary to the facts as found by the trial court and to reverse and render the judgment of the trial court when the evidence on the issue is conflicting, and the evidence in support of the trial court's finding is not so intrinsically weak as not to support the judgment. Art. 1626, Rev. Civ. Stats.; Choate v. San Antonio & A. P. Ry. Co., 91 Texas, 406; Burgess v. Western U. Tel. Co., 92 Texas, 128; Williams v. Winslow, 84 Texas, 371.

The court's finding that Elza did not at any time purchase any of the fences from Haley is amply sustained by the testimony. Wichita Land & Cattle Co. v. State, 80 Texas, 684, 16 S. W., 649; International & G. N. Ry Co. v. Johnson, 23 Texas Civ. App., 192, 55 S. W., 772; Burleson v. Tinnin, 100 S. W., 350; Farley v. Missouri, K. & T. Ry. Co., 34 Texas Civ. App., 81, 77 S. W., 1040; Sanford v. Terrell, 87 S. W., 655

The burden was upon the defendants to show that the fences, if they could be counted at all as a part of the Elza improvements, were purchased within sixty days from the termination of the lease covering the

sections purchased, and on the failure of the defendants to show this fact by satisfactory evidence, the court was warranted in not considering the fences as a part of the improvements. Rev. Stats., 1895, arts. 4218r, 4218w.

One of the conditions imposed upon a purchaser precedent to his acquisition of final title to school land is, that he must, after his purchase and within three years, erect permanent and valuable improvements on the land to the extent of $300, and, when the purchaser fails to erect such improvements, he has failed to perform his contract with the State and the State may recover the land. Rev. Stats. of 1911, art. 5424 (being sec. 3 of the Act of April 19, 1901); Rev. Stats. of 1895, art. 4218l; Slaughter v. Terrell, 100 Texas, 600, 102 S. W., 399; Williams v. Finley, 99 Texas, 468; Bourn v. Robinson, 107 S. W., 873; Harper v. Terrell, 96 Texas, 479.

There was no finding by the trial court on the issue of limitation and none was requested by appellant, and under these circumstances it will be presumed that the trial court resolved this issue in such manner as to support the judgment; that is, that the trial court found that the fences were not acquired by limitation. Malone v. Fisher, 71 S. W., 996; Gardner v. Watson, 76 Texas, 25; Drake v. Davidson, 28 Texas Civ. App., 184, 66 S. W., 889; Hughes v. Landrum, 40 Texas Civ. App., 196, 89 S. W., 85.

*Charles Rogan, W. Van Sickle,* and *George M. Thurmond,* for defendant in error.—The testimony of the defendants, Spencer Elza and Lawrence Haley, to the effect that said Haley had sold to the appellant the fences erected by said Haley upon the lands in controversy and at a time when he had the right to sell them being undisputed, the same can not be arbitrarily disregarded by the court trying the case without a jury, and said witnesses having testified that appellant had acquired said fences within three years after the date of the award to him of his home tract, the same should have been taken into consideration by the court in determining whether or not appellant had met the requirements of the law under which he purchased in the matter of improvement of the lands purchased. Acts of 1895, chap. 48, secs. 18, 23, pp. 69, 73; Rev. Stats., 1895, arts. 4218s, 4218w.

Lawrence Haley having erected four miles of fence on sections 40 and 42 and fractional section 4 while the said lands were leased to him by the State, and he having transferred and assigned his said lease to appellant, and the appellant having purchased said land under a preference right given him under the law as assignee, during the life of the lease, such fences became permanent and valuable improvements upon his land, in contemplation of law, the same as though he built them on said land within three years after his purchase thereof. As to appellant's preference right to purchase under lease: Act, 1905, sec. 5, p. 163; Rev. Stats., 1895, art. 4218w; art. 5457, Rev. Stats., 1911. As to

acquirement of improvements: Shelton v. Willis, 23 Texas Civ. App., 547, 58 S. W., 176.

MR. JUSTICE GREENWOOD delivered the opinion of the court.

This controversy is over the right of the State to recover certain school land purchased by defendant in error, upon the ground that he did not within three years after his purchase erect on the land permanent improvements of the value of three hundred dollars. The State recovered the land in the District Court on the finding that defendant in error had failed to erect such improvements. The Court of Civil Appeals reversed the trial court's judgment and rendered judgment .for defendant in error, holding that he had fully complied with his obligation with respect to improvements, one of the justices dissenting from the action of the court in rendering judgment. Elza v. State, 169 S. W., 633.

The State's right to recover depends upon the proper application to the facts of that portion of section 3 of the Act of April 19, 1901, now article 5424, Revised Statutes, which reads: "If any purchaser shall fail to reside upon and improve in good faith the land purchased by him as required by law, he shall forfeit said land and all payments made thereon to the State, to the same extent as for the non-payment of interest and such land shall be again upon the market as if no such sale and forfeiture had occurred."

We can not adopt the literal construction of this language, as urged by defendant in error, and require both a failure to reside upon the land and a failure to improve same in good faith before the purchaser incurs forfeiture. Under such a construction, the purchaser might never reside on school land and yet he could acquire title, which would be manifestly contrary to the intent of the Legislature. We reconcile the intent and purpose of the Act with its language by reading the word "or" in place of the word "and," where the latter word first appears in the part of the Act under consideration. And, there can be no doubt, under these circumstances, that the law requires this substitution. Witherspoon v. Jernigan, 97 Texas, 105, 106, 76 S. W., 445; Slaughter v. Terrell, 100 Texas, 603, 604, 102 S. W., 399.

If certain fences should be included in the improvements erected by the defendant in error, then such improvements exceeded three hundred dollars in reasonable market value. Without such fences, defendant in error erected less than three hundred dollars worth of improvements. These fences were erected by L. Haley, when he held the land under lease from the State, and the Court of Civil Appeals rendered its judgment on the finding that defendant in error became the owner of the fences "by purchase and by limitation."

The trial court expressly found that defendant in error *did not purchase* the fences. This finding was certainly not without support in the evidence, unless the view be correct, which seems to have been entertained by a majority of the Court of Civil Appeals, that four miles of

the fences necessarily passed to defendant in error through the assignment by L. Haley of his lease of the lands then unsold. We can not approve that view: because there was evidence, such as that of L. Haley hereinafter recited, clearly authorizing the trial court to conclude that the fences were reserved by Haley, when he assigned the lease, as the trial court evidently concluded, when he found that defendant in error had never purchased the fences. The testimony of L. Haley was that there might have been a written contract in regard to the purchase of these fences, as to which he did not recollect; that no bargain for the fences was closed before the lease was transferred; and, that he would have moved the fences, within sixty days after the lease expired, if he had not been paid the price promised by defendant in error. Moreover, defendant in error plead that within sixty days *after* the sale of the lands to him he purchased the four miles of fences from Haley. The transfer of the lease is dated April 28, 1906, and he did not apply to purchase the lands on which these fences stood until May 17, 1906. Hence defendant in error expressly plead that Haley continued to own these fences subsequent to the date of the transfer of the lease to him.

It is contended that even though the fences were reserved by Haley, yet they became defendant in error's property by virtue of his purchase of the land, on Haley's failure to remove them within the time allowed by article 5457, Revised Statutes, which provides that "all improvements made by lessees on lands leased by them are hereby declared to be personal property, which may be removed by such lessees on the expiration of their lease contracts; and they shall have sixty days after such expiration in which to remove the same." It is conceded that the fences became a part of the realty, when not removed in due time, but it is said that since defendant in error had previously bought the land, the fences never became the property of the State, but instead passed to defendant in error. The error in this contention lies in the assumption that the title to the realty was in defendant in error when the fences became a part thereof.

The effect of the purchase of school land, with actual settlement required, was declared by this court, in an opinion of Justice Williams, in the case of Williams v. Finley, 99 Texas, 474, 90 S. W., 1087, in the following language: "The title remains in the State and the purchaser has only the right to acquire it by continued compliance with the conditions prescribed by the statute. Neither at the date of the institution of his action nor of the trial was it true, therefore, that Williams (the purchaser), had acquired the title of the State by merely paying or agreeing to pay for it the amount allowed defendant as a credit on the purchase money notes, but he still labored under other onerous conditions the value of the performance of which can not be ascertained and measured in money." It would be absurd to say that because the title to certain improvements would pass from the State to defendant in error upon his compliance with the express condition precedent that he erect improvements of specified value on the land, that he was relieved

of the condition. The State, on Haley's failure to remove the fences, if he had not made a sale thereof to defendant in error, as found by the trial court, held the title to both land and fences, subject to defendant in error's right, under his contract of purchase, to acquire the title by compliance with the obligations assumed by him to the State. One of those obligations was "within three years after his purchase to erect permanent and valuable improvements on the land purchased by him, which improvements shall be of the reasonable market value of three hundred dollars." Without compliance with that obligation, defendant in error could never have title to the land and hence could never have title to fences which became part of the land. The utmost liberality of construction, within reason, would not warrant treating improvements as erected by one who had nothing to do with their original construction and who had never become invested with title thereto.

What has been said precludes our sustaining the claim by defendant in error that he acquired title to the fences by limitation. He could have had possession of the fences for only a few weeks when they were personalty. From the time the fences became part of the realty, the title, as we have shown, was in the State, subject to defendant in error's contract of purchase, and the realty was necessarily held by defendant in error under the terms and conditions of his contract of purchase. Bourn v. Robinson, 49 Texas Civ. App., 157, 107 S. W., 876.

Concluding that the fences did not pass to defendant in error, as assignee of Haley's lease, by operation of law, and that defendant in error acquired no right thereto by limitation, and that the evidence was such as to warrant a finding either way with respect to whether defendant in error actually purchased the fences from Haley, it follows that the Court of Civil Appeals was not authorized to render judgment against plaintiff in error. For, as tersely expressed by Chief Justice Phillips, in Post v. State, 106 Texas, 500, 171 S. W., 708: "The province of determining questions of fact is in the trial court. The Court of Civil Appeals has the power to set aside its finding and remand the cause for a new trial. Where the evidence is without conflict it may render judgment. But where there is any conflict in the evidence upon a material issue, it has no authority to substitute its findings of fact for those of the trial court. Choate v. Railway Co., 91 Texas, 406, 44 S. W., 69."

The action of the Court of Civil Appeals, in disapproving of the trial court's material finding of fact, which was within the scope of its authority, requires that the judgment of the District Court be reversed. Tweed v. Telegraph Co., 107 Texas, 254, 166 S. W., 696; Pollock v. Railway Co., 103 Texas, 70, 123 S. W., 408.

The judgments of the District Court and of the Court of Civil Appeals are accordingly reversed, and the case is remanded for trial in the District Court.

*Reversed and remanded.*

Associate Justice Hawkins did not sit in this case, being disqualified.